DANIEL G. BOGDEN
United States Attorney
Nevada State Bar No. 2137
MICHAEL A. HUMPHREYS
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone (702) 388-6336
Facsimile (702) 388-6787
Michael.Humphreys@usdoj.gov
Counsel for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:13-CV- ( ) |
| v. | |
| $1,002,327.00 IN UNITED STATES CURRENCY seized from Fidelity Investment Account No. xxxxx9730; | |
| $46,173.56 IN UNITED STATES CURRENCY seized from Bank of America Account No. xxxxxxx3971; | |
| $39,451.60 IN UNITED STATES CURRENCY seized from Gulf Coast Community Bank Account No. xxxxxxx4690; | |
| 2012 Ford F-250 Truck, VIN: 1FT7W2BT1CEC44330; and | |
| 2011 Chevrolet 3500 Express Van, VIN: 1GB3G3CG9B1113885. | |
| Defendants. | |

# VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through Daniel G. Bogden, United States Attorney for the District of Nevada, and Michael A. Humphreys, Assistant United States Attorney, in a civil cause for forfeiture, respectfully state as follows:

## SUBJECT MATTER JURISDICTION

1. This Court has jurisdiction under the provisions of 19 U.S.C. §§ 1603, 1608, and 1610; 18 U.S.C. § 983; 28 U.S.C. §§ 1345, 1355 and 1395; 21 U.S.C. §881; 18 U.S.C. § 981(a)(1)(A) and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp. Rule").

## *IN REM* JURISDICTION

2. This Court will have *In Rem* jurisdiction over the defendant-properties if this Court signs an Order for Summons and Warrant of Arrest, *In Rem*, for the properties and the Clerk of the Court issues a Summons and Warrant of Arrest, *In Rem*, which will be executed upon the defendant-properties and returned to this Court.

## VENUE

3. This Court has venue over this matter pursuant to 28 U.S.C. §§ 1355 and 1395 because the above-named defendant-properties are now and, during the pendency of this action, will be in the jurisdiction of this Court; or, because the acts or omissions giving rise to forfeiture occurred in this judicial district.

## PARTICULAR DESCRIPTION

4. The defendant-properties are more particularly described as follows:

   a.) $1,002,327.00 IN UNITED STATES CURRENCY, seized on January 3, 2013, from Fidelity Investments, located at 100 Crosby Parkway, Covington, Kentucky, Acct. No. xxxxx9730; and

. . .

. . .

1         b.) $46,173.56 IN UNITED STATES CURRENCY, seized on January 3, 2013,
2 from Charles Burton Ritchie's Bank of America account number xxxxxxx3971 at the Bank of
3 America branch located at 300 South Fourth St., Las Vegas, Nevada.

4         c.) $39,451.60 IN UNITED STATES CURRENCY, seized on January 3,
5 2012 from the Gulf Coast Community Bank, located at 40 North Palafox Street, Pensacola,
6 Florida; Acct. No. xxxxxxx5034.

7         d.) a 2012 Ford F-250 truck, VIN: 1FT7W2BT1CEC44330, seized on January 3,
8 2013.

9         e.) a 2011 Chevrolet 3500 Express Van, VIN: 1GB3G3CG9B1113885, seized on
10 January 3, 2013.

## PLACE OF SEIZURE

13   5. a.) The Fidelity Investments Accounts funds, in the amount of $1,002,327.00 were
14 seized from Fidelity Investments located at 100 Crosby Parkway, Covington, Kentucky.

15         b.) The Bank of America cashier's funds, in the amount of $46,173.56, were seized
16 from the Bank of America branch located  seized from the Bank of America branch  located at
17 300 South Fourth St., Las Vegas, Nevada.

18         c.) The Gulf Coast Community Bank funds, in the amount of $39,451.60 were seized
19 from the 40 North Palafox Street branch of the Gulf Coast Community Bank in Pensacola,
20 Florida.

21         d.) The 2012 Ford F-250 truck was seized from Charles Burton Ritchie at 1010
22 Creighton Rd. Pensacola, FL.

23         e.) The 2011 Chevrolet 3500 Express Van  was seized from Charles Burton Ritchie at
24 1010 Creighton Rd. Pensacola, FL.

25 . . .
26 . . .

**CUSTODY OF ASSET**

6. The defendant-properties have remained in the custody and control of the United States Department of Treasury.

**TIMELY FILING**

7. The defendant-properties were subject to administrative summary forfeiture proceedings. However, the following individuals filed administrative claims with Internal Revenue Service as follows:

| Asset | Administrative Claimant | Date Claim Filed |
|---|---|---|
| a. $1,002,327.00 | Stephanie Ritchie | February 27, 2013 |
| b. $46,173.56 | Charles Burton Ritchie, ZIW, LLC., and the Psychedelic Shack, Inc., | February 27, 2013 |
| c. $39,451.60 | Charles Burton Ritchie, ZIW, LLC., and the Psychedelic Shack, Inc., | February 27, 2013 |
| d. 2012 Ford F-250 pick-up | Charles Burton Ritchie, ZIW, LLC., and the Psychedelic Shack Inc., | February 27, 2013 |
| e. 2011 Chevrolet 3500 Express Van | Charles Burton Ritchie, ZIW, LLC., and the Psychedelic Shack., Inc. | February 27, 2013 |

**VALUE**

8. The value of the seized assets is as follows:

a. The funds seized from the Fidelity Investment Account are valued at $1,002,327.00.

b. The funds seized from the Bank of America account are valued at $46,173.56.

c. The funds seized from Gulf Coast Community Bank are valued at $39,451.60.

d. The 2012 Ford F-250 truck is valued at $36,800.00.

e. The 2011 Chevrolet 3500 Express Van is valued at $16,725.00.

. . .

# **FACTS**

9. The federal Controlled Substances Act prohibits the possession, sale and/or distribution of, amongst other substances, marijuana, cocaine and methamphetamines. Recently, drug traffickers have attempted to circumvent the strictures of the CSA by manufacturing synthetic cannabinoid substances which do not fall under the traditional definition, or the customary chemical structure, of marijuana, cocaine, methamphetamines and other common illicit drugs. Generally, controlled substance analogues are drugs that are chemically similar to regulated controlled substances and which produce the same stimulant, depressant and hallucinogenic effect on the user as would occur from consuming a specific and traditional controlled substance.

10. In recent years, traffickers of illicit mood-altering substances have created compounds that are chemically similar to marijuana. These substances are formally known as smokeable synthetic cannabinoid products but are commonly referred to as 'spice.' 'Spice' is manufactured from a variation of chemicals that are similar to other active ingredients in THC, the active ingredient in marijuana, and provides the same psychoactive effect, i.e., it enables the user to 'get high.'

11. In response to this wave of man-made psychotropic compounds, Congress expanded the definition of "controlled substances," to include substances that are chemically-similar to Schedules I and II controlled substances and produce the same pharmacological effect on the human body when ingested. As noted above, these compounds are called analogue controlled substances and have been declared to be contraband Schedule I or Schedule II controlled substances pursuant to Title 21 U.S.C. § 802(32)(A).

12. Since at least June of 2012, Charles Burton Richie (hereinafter, "Ritchie") Benjamin Galecki (hereinafter, "Galecki") and others have conspired to manufacture, distribute and sell analogue controlled substances in violation of the Controlled Substances Act. They have also

. . .

1  committed money laundering crimes by engaging in financial transactions with the proceeds of
2  these drug trafficking offenses.

3      13. DEA and IRS investigators discovered that Ritchie and his conspirators were
4  manufacturing and distributing suspected 'spice' from a warehouse located at 5435 Desert Point
5  Drive in Las Vegas, Nevada, within the geographic and jurisprudential jurisdiction of this Court.

6      14. The 'spice' products were manufactured under the aegis of Zensense Incense Works
7  (or "ZIW"). Once manufactured, the products were distributed by ZIW, Inc., and Psychedelic
8  Shack, Inc., the latter of which operates three head/smoke shops in Florida. Both ZIW and
9  Psychedelic Shack are owned and operated by Charles Burton Ritchie.

10      15. Ritchie, Galecki and others would market the products, that were sold, at 'brick and
11  mortar' establishments and over the internet, as incense and aromatherapy when they were well
12  aware of the psychotropic qualities of the substances that they sold.

13      16. The manner in which Ritchie and Galecki sold their products indicates that the
14  products were being offered as controlled substances rather than innocuous household products
15  designed to improve the living space, as would be the central purpose of incense, aromatherapy
16  and similar products. For example, the product labeling and internet promotions restricted sale of
17  the substances to customers who are 18 and older. There would be no need for an age restriction
18  on the sale and/or use of the product if it was being offered as an incense or aromatherapy.

19      17. Similarly, ZIW labels all of its products with a statement that it is not for human
20  consumption. This statement is misleading since other factors, such as the presence of analogue
21  controlled substance ingredients as well as the pricing of the products established that the
22  products were intended for sale and use as illicit, recreational drugs.

23      18. On July 25, 2012, DEA and IRS agents searched 5435 Desert Point Drive, Las Vegas,
24  Nevada, the business premises of ZIW, pursuant to a duly-authorized federal search warrant.
25  ZIW, is a corporation registered in Pensacola, Florida, and licensed to do business in Clark
26  County, Nevada. ZIW held a three-month lease on 5435 Desert Point Drive during the course of

events described in this Complaint. Florida's Department of State, Division of Corporations, identifies Charles Burton Ritchie as the Managing Member of ZIW.

19. During the course of that search, the agents found, amongst other things:

a.) 22 kilograms of boxed finished product; and 24 additional kilos of unboxed finished product throughout the laboratory;

b.) samples of 'spice' packaged for retail sale with names such as "DefCon-5"; "Total Annihilation"; and, "Head-Hunter";

c.) large quantities of raw ingredients used to manufacture the 'spice,' including acetone, flavoring agents, organic plant material (the medium upon which the manufactured ingredients were applied);

d.) approximately seven kilograms of a white, powdery substance;

e.) tools, machines and equipment used to manufacture the finished product such as cement mixers, drying tables, stainless steel cookware, graduated glass beakers and measuring devices; and

f.) packing and shipping materials, including labeled and unlabeled, packed and empty FEDEX boxes.

20. DEA chemically-analyzed both the finished/packaged, final product as well as the white, powdery substance identified in paragraph No. 20, above, and both tested positive for the presence of 1-(5-Fluoropenty1)-3-(2,2,2,3-tetramethylcyclopropoyl, commonly known as UR-144. UR-144 is an analogue of JWH-018, a Schedule I controlled substance.

21. The substance 1-(5-Fluoropenty1)-3-(2,2,2,3-tetramethylcyclopropoyl is typically purchased from China and other countries in southeast Asia.

22. On July 26 ,2012, a DEA agent visited the Psychedelic Shack smoke shop, located in Pensacola, Florida, and spoke with Ritchie. During the course of that visit, the agent saw suspected spice products on display and for sale to the public. The brand names for the 'spice' included: 'Avalanche,' 'Neutronium,' 'Sonic Zero-Cherry,' 'Sonic Zero-Blueberry,' and 'Witch

Doctor.' Ritchie was interviewed and told the agent that all products that he sold through ZIW and Psychedelic Shack were tested to assure that they did not contain any controlled substances. Ritchie also said that he purchased at least one of the principal ingredients from China. Ritchie also said that the finished products produced by ZIW are distributed, retail, through the three Psychedelic Shack stores in Florida; and are also distributed to smoke shops in 47 other states.

23. In a telephone interview with other IRS/DEA agents on August 23, 2012, Ritchie repeated the denial that ZIW products were controlled substances, explaining that the products are tested by an independent, private lab to assure that they are in compliance with federal drug laws.

24. Ritchie stated that he had no control over what his customers do with the product(s) after it is sold to them.

25. Ritchie's claim that ZIW products are tested to assure compliance with federal law is disingenuous. At least one of the laboratories that tests ZIW products provides two reports identifying the constituent ingredients in the tested product. One report provides incomplete data of what ingredients are absent from the sample. A second report lists all substances, including banned substances. Ritchie's representations that ZIW products are compliant with federal law, is based upon the first report which is incomplete in its analysis; and is, therefore, inaccurate in the conclusions that it draws regarding the legitimacy of such substances.

26. Financial analysis determined that, between May and July, 2012, $2,155,064.00 was deposited into the ZIW, Inc., Gulf Coast Community Bank, identified as Acct. No. xxxxxxx4740. These gross receipts were from the manufacture, distribution and sale of 'spice.'

27. Financial analysis further determined that $664,800.00 was transferred from the ZIW, Inc., Gulf Coast Community Bank, identified as Acct. No. xxxxxxx4740, to Charles Burton Ritchie's personal checking account, identified at xxxxxx5034, also maintained at the Gulf Coast Community Bank.

. . .

. . .

28. Financial analysis further disclosed that on three separate occasions from May to July 2012, $180,000.00 was transferred from Ritchie's personal Gulf Coast account, identified as xxxxxx5034, into a Fidelity Investments account, identified as account number xxxxx9730.

29. Financial analysis also established that on July 6, 2012, Ritchie transferred $150,000.00 from his Gulf Coast Bank account identified as xxxxxxx5034 to Bank of America account number xxxxxxx3971.

30. Between February 2011 and July 2012, Burton, Galecki and/or ZIW, Inc., made numerous wire payments, totaling approximately $317,405.00, from the ZIW, Inc., account identified as Gulf Coast Community Bank, Acct. No. xxxxxxx4740 to various vendor financial institution accounts in Hong Kong and other Chinese cities for the purchase of 1-(5-Fluoropenty1)-3-(2,2,2,3-tetramethylcyclopropoyl, the analogue controlled substance ingredient that Ritchie and his confederates used to manufacture the various brands of 'spice product.

31. Charles Burton Ritchie maintained a corporate checking account in the name of Psychedelic Shack, at Gulf Coast Community Bank. That account was identified as number xxxxxxxx4690. Financial analysis revealed that from May to July of 2012, Charles Burton Ritchie deposited proceeds from the retail sale of analogue controlled substances at his Psychedelic Shack store into the Gulf Coast Community Bank account xxxxxxx4690. The 2012 Ford F-250 was purchased by Charles Burton Ritchie on July 23, 2012 and was paid for out of the Gulf Coast Community Bank, Account No. xxxxxxxx4690.

32. The Chevrolet 3500 van was purchased by Ritchie on June 12, 2012, and was paid for out of the ZIW, LLC., bank account number xxxxxxxx4740.

33. The earnings, assets and profits described in this complaint are derived solely from the manufacture, distribution and sale of analogue controlled substances by Ritchie, Galecki and their corporate alter egos, ZIW, L.L.C., and/or Psychedelic Shack, Inc.

. . .

. . .

## FIRST CAUSE OF ACTION

34. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

35. The defendant-assets were furnished or were intended to be furnished in exchange for controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION

36. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 35 as though fully set forth herein.

37. The defendant-assets are proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CAUSE OF ACTION

38. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39. The defendant-assets were used or were intended to be used to facilitate violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FORTH CAUSE OF ACTION

40. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

41. The defendants are involved in transactions or attempted transactions in violations of 18 U.S.C. § 1956, or are properties traceable to such properties, are subject to seizure pursuant to 18 U.S.C. § 981(b), and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A); and

. . .

. . .

**CONCLUSION**

42. Because of the foregoing, the defendant-properties are subject to seizure and should be forfeited to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays as follows:

1. Due process issue to enforce the forfeiture of the defendant-properties;

2. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3. The defendant-properties be condemned and be forfeited to the United States; and;

4. This Court enter other and further relief as it deems just and proper.

DATED this 29th day of May, 2013.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

 /s/ MichaelAHumphreys
MICHAEL A. HUMPHREYS
Assistant United States Attorney

## VERIFICATION

I, Robert J. Norris, am a Special Agent with the Internal Revenue Service. I have read the contents of the foregoing complaint, and I verify and affirm, under penalty of perjury, that the foregoing is true and correct pursuant to 28 U.S.C. § 1746(2).

Executed on this 29th day of May, 2013.

_____
Robert J. Norris
Special Agent
Internal Revenue Service